United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 06-40903

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**EDWARD JOE MARQUEZ, JR.,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Eastern District of Texas
(4:05-CR-82)**

Before GARWOOD, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

Convicted of possessing methamphetamine with intent to distribute (21 U.S.C. § 841(a)(1)), assaulting a federal employee (18 U.S.C. § 111), and using a firearm in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)), Edward Joe Marquez was sentenced to, *inter alia*, 171 months imprisonment. He challenges: the sufficiency of the evidence; and the exclusion of his wife's purportedly mitigating testimony. **AFFIRMED.**

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 5 April 2006, approximately 15 state and federal Officers, wearing bullet-proof vests identifying them as law enforcement, served a "no knock" search and arrest warrant at Marquez' residence. Upon entering the house, shouting "Sheriff's Department, search warrant", Officers were confronted by two pit-bull dogs. When one lunged at the Officers, they shot and injured it. Officers then heard Marquez moving furniture to barricade himself in a back room. A protracted confrontation ensued.

Marquez testified he was unaware the Officers were law enforcement, but feared they were a rival motorcycle gang. Others present testified Officers inside and outside the house yelled they were law enforcement. In response, Marquez threatened to shoot them if they opened his barricaded door.

Following failed attempts to subdue Marquez, Officers fired five rounds of tear gas into his room. After the fifth round, Marquez fired his .45 caliber pistol toward an Officer within the house, who had been communicating with him. That shot stopped in an interior wall, approximately 22 feet from the Officer. Officers discharged three additional tear-gas rounds. Marquez responded by firing at an Officer outside the house, hitting the Officer's unmarked police car. Following negotiations, Marquez eventually disassembled his firearm, placed it outside the room, and was arrested.

After being read his *Miranda* rights, Marquez admitted firing the two shots, but claimed he aimed at the ceiling; no bullet holes were found there, however, and ballistics tests showed Marquez' weapon fired the bullets that struck the interior wall and the unmarked car.

The search of Marquez' property produced:  5.5 grams of methamphetamine in his car; and tools and ingredients to make methamphetamine (*e.g.*, muriatic acid, Coleman fuel, rubbing alcohol, table salt, hydrogen peroxide, and iodine) in his barn. One Officer present testified he has never seen those items together when they were not involved in methamphetamine creation. The Officers further reported a fresh chemical scent in the air, as if methamphetamine had been cooked there recently.

## II.

Marquez contends:  the evidence was insufficient to prove he intended to assault law enforcement Officers and possessed methamphetamine; and the district court erred in excluding his wife's testimony, offered to show he was a Vietnam veteran suffering from Post-traumatic Stress Disorder.  Both claims lack merit.

## A.

Marquez moved for a judgment of acquittal at the close of the Government's case and renewed it at the close of all the evidence. **[Bl.Br. at 10]**  Accordingly, we review his sufficiency claims to

determine "whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense[s] beyond a reasonable doubt". *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003) (internal quotation marks omitted).

Concerning his assault and firearm-use convictions, Marquez contends he lacked the requisite *mens rea*. Toward this end, he testified: he believed the Officers were members of a rival motorcycle gang, there to kill him; he later suspected they might be law enforcement Officers; but, "[e]ven though they were cops, I still thought they was there to kill me". Contrary to his post-arrest statement that his shots were aimed at the ceiling, Marquez testified: he fired the first shot in a failed suicide attempt; and the second resulted from his weapon's jamming and then chambering a round as his hand slid against the trigger due to an incoming tear-gas canister.

Regarding his methamphetamine conviction, Marquez also contends, *inter alia*, no physical evidence directly linked him to the methamphetamine (*e.g.*, his fingerprints were not found on the methamphetamine's container). He testified: he had no knowledge of the substance hidden in his car; and the items in his barn were for cleaning and cooking fish.

4

Ample evidence supports a rational juror's finding Marquez intentionally assaulted law enforcement Officers, used a firearm in furtherance of this crime of violence, and possessed distributable quantities of methamphetamine. The sufficiency challenges fail.

B.

Outside the presence of the jury, Mrs. Marquez testified her husband had been treated for, among other things, Post-traumatic Stress Disorder, stemming from his service in Vietnam. Marquez proffered this testimony, *not* to support an expert opinion, but to demonstrate his mental state during the events in question. In evaluating, *inter alia*, the relevance of Mrs. Marquez' testimony under Federal Rule of Evidence 401, the district court stated: "[Mrs. Marquez'] testimony ... doesn't give the jury a basis to go one way or the other ... without an expert to say what that means".

An abuse-of-discretion standard of review applies. *E.g.*, **United States v. Parks**, 68 F.3d 860, 867 (5th Cir. 1995). Along this line, "a trial court has broad discretion in determining the admissibility of evidence based on relevance ..., and that determination will be overturned only when the abuse of that discretion is clearly shown from the record". **United States v. Collins**, 690 F.2d 431, 438 (5th Cir. 1982). **Collins** upheld the exclusion of the defendant's wife's testimony, proffered to demonstrate the defendant's mental state, because the testimony "did not invoke specific observations, involved a professional

5

opinion as to mental competency, and related to a time period distant from the events at issue". *Id.*

As in **Collins**, if Marquez wished to place his mental health at issue, or use it to negate intent, he should have utilized an expert witness, such as the physician who, he claimed, prescribed medication for his psychiatric problems. In the absence of such professional accompaniment to explain Mrs. Marquez' testimony's relevance to the jury, its exclusion was *not* an abuse of discretion.

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**
